**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Autumn Chamberlain, *on behalf of herself and all others similarly situated*,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>NRA Group, LLC d/b/a National Recovery Agency,<br><br>　　　　　　　Defendant. | Civil Action No.: _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

For his Class Action Complaint, Plaintiff, Autumn Chamberlain, by and through her undersigned counsel, pleading on her own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Autumn Chamberlain ("Plaintiff"), brings this class action for damages resulting from the illegal actions of NRA Group, LLC d/b/a National Recovery Agency ("NRA" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2. NRA is a nationwide debt collector. As part of its debt collection operations, NRA bombards consumers with multiple automated debt collection text messages, even after the consumers ask NRA to "STOP" sending the messages and after NRA falsely claims that the consumer has "successfully been unsubscribed" and "will not receive any more messages from this number."

3. Plaintiff is one such consumer. After receiving a number of automated debt collection messages from NRA that advised Plaintiff "To stop receiving text messages reply

STOP," Plaintiff messaged NRA to "STOP" sending the messages.

4. When Plaintiff messaged NRA to "STOP" sending her messages, NRA responded by messaging Plaintiff "You have successfully been unsubscribed.  You will not receive any more messages from this number. Reply START to resubscribe."

5. Plaintiff never messaged NRA "START."

6. Nonetheless, NRA continued to send Plaintiff near-identical subsequent automated text messages after Plaintiff asked NRA to "STOP" messaging her.

7. Plaintiff seeks relief for herself and all others similarly situated for NRA's unlawful behavior.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

9. Subject matter jurisdiction exists under 28 U.S.C. § 1332(d)(2), as Plaintiff seeks up to $500 in damages for each violation of the TCPA, which when aggregated among a proposed class numbering more than a thousand members, exceeds the $5,000,000.00 threshold for federal court jurisdiction.  Plaintiff also alleges a national class which will result in at least one class member residing in a different state.

10. The Court has personal jurisdiction over NRA because NRA's principal place of business is located in this District.

11. Venue is proper in this District in the acts that give rise to Plaintiff's claims – including but not limited to Defendant's sending of text messages to Plaintiff – occurred within this District.

## PARTIES

12. Plaintiff is, and at all times mentioned herein was, an adult individual residing in

Lutz, Florida.

13.     NRA is a Pennsylvania company with its principal place of business located at 2491 Paxton Street, Harrisburg, Pennsylvania 17111.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

14.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

15.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)     to dial such numbers.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

16.     Within the last year, NRA began placing automated text messages to Plaintiff's cellular telephone, number 914-XXX-1316, in an attempt to collect an alleged debt.

17.     The messages NRA sent to Plaintiff were near-identical to one another and to messages that NRA sent to other consumers across the country.

18.     The language in the messages was automatically generated from a template without any actual human intervention in the drafting or sending of the messages

19.     The messages NRA sent to Plaintiff – along with the messages NRA to sent to other consumers – advised Plaintiff "Top stop receiving text messages reply STOP."

20.     Plaintiff repeatedly messaged "STOP" to NRA in order to get it to stop sending her automated text messages.

21. Each time Plaintiff messaged "STOP," NRA responded by claiming "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe."

22. However, notwithstanding Plaintiff's requests for NRA to "STOP" and NRA's promises that it would stop messaging her, NRA continued to send automated text messages to Plaintiff's cellular telephone in an attempt to collect an alleged debt.

23. The telephone system NRA used to send the messages constitutes an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

24. To send the messages, NRA stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time.

25. No human directed any single text message to Plaintiff's number.

26. In addition, upon information and belief the hardware and software combination utilized by NRA has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

27. After Plaintiff messaged NRA to "STOP" messaging her, NRA did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on her cellular telephone.

28. Plaintiff's time was wasted tending to NRA's text messages sent after she expressly asked NRA to "STOP" messaging her.

29. Moreover, NRA's post-STOP messages annoyed, frustrated, and angered Plaintiff.

30. Plaintiff's receipt of Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

31. Defendant did not place the text messages for an emergency purpose.

## CLASS ACTION ALLEGATIONS

A. **The Class**

32. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

33. Plaintiff represents, and is a member of the following class:

**All persons within the United States to whom NRA or its agent/s and/or employee/s sent a text message to said person's cellular telephone through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint, after said person had previously messaged "STOP," "Stop" or "stop" to NRA.**

34. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

B. **Numerosity**

35. Upon information and belief, Defendant has placed automated text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States, after receiving messages asking it to "STOP." The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

36. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from Defendant's records.

5

### C. Common Questions of Law and Fact

37. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant sent text messages to Plaintiff and Class members' cellular telephones using an ATDS;

   b. Whether Defendant can meet its burden of showing it obtained prior express consent to send each text message;

   c. Whether Defendant's conduct was knowing, willful, and/or negligent;

   d. Whether Defendant is liable for damages, and the amount of such damages; and

   e. Whether Defendant should be enjoined from such conduct in the future.

38. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely places automated text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

39. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

40. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

41. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against NRA is small because it is not economically feasible for Class members to bring individual actions.

42. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Negligent Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

43. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

44. Defendant negligently placed multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

45. Each of the aforementioned messages by Defendant constitutes a negligent violation of the TCPA.

46. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each text message placed in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

47. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

48. Plaintiff and the Class are also entitled to and do seek a declaration that:

   a. Defendant violated the TCPA;

   b. Defendant utilized an ATDS to message Plaintiff and the Class; and

   c. Defendant placed automated text messages to the Plaintiff and the Class without prior express consent.

## COUNT II
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

49. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

50. Defendant knowingly and/or willfully placed multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

51. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

52. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each message in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

53. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

54. Plaintiff and the Class are also entitled to and do seek a declaration that:

   a. Defendant knowingly and/or willfully violated the TCPA;

   b. Defendant knowingly and/or willfully used an ATDS to send text messages to Plaintiff and the Class;

    c. Defendant willfully placed automated text messages to non-customers such as Plaintiff and the Class, knowing it did not have prior express consent to do so; and

    d. It is Defendant's practice and history to place automated and text messages to borrowers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff; and
6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: February 16, 2021

        Respectfully submitted,
        By /s/ Sergei Lemberg
        Sergei Lemberg, Esq.
        Bar #317359
        LEMBERG LAW, L.L.C.
        43 Danbury Road, 3rd Floor
        Wilton, CT 06897
        Telephone: (203) 653-2250
        Facsimile: (203) 653-3424
        E-mail: slemberg@lemberglaw.com
        Attorneys for Plaintiff