UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

AUTUMN CHAMBERLAIN, *on behalf of herself and all others similarly situated*,

Plaintiff,

v.

NRA GROUP, LLC,

Defendant.

CIVIL ACTION NO. 1:21-CV-00281

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Plaintiff Autumn Chamberlain ("Chamberlain") on behalf of herself and all others similarly situated. (Doc. 84). Chamberlain commenced this action by filing a complaint against Defendant NRA Group, LLC d/b/a National Recovery Agency ("the NRA"). (Doc. 1). On April 22, 2021, she filed the operative amended complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c) (Doc. 8). For the following reasons, Chamberlain's motion is **GRANTED**. (Doc. 84).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Chamberlain's uncontroverted statement of material facts. The NRA did not file an answer to Chamberlain's statement of material facts. (Doc. 88). In December 2020, the NRA began sending debt collection text messages through a messaging vendor. (Doc. 88, ¶ 2). The NRA's text message included information regarding debt the NRA sought to collect. (Doc. 88, ¶ 4). The text message also advised the recipient, "To stop receiving text messages reply STOP." (Doc. 88, ¶ 5). Chamberlain and class members responded to the NRA's messages with "STOP," which the NRA received and

documented. (Doc. 88, ¶ 6). In a deposition, the NRA's CEO, Steven C. Kusic ("Kusic"), admitted the NRA continued to send Chamberlain and class members text messages after they responded "STOP." (Doc. 88, ¶ 8). The NRA's data shows that 4,984 unique telephone numbers responded with "STOP" but then received subsequent text messages from the NRA. (Doc. 88, ¶ 9). The NRA has not communicated with the texting vendor it contracted regarding compliance with "STOP" requests. (Doc. 88, ¶ 12). The NRA stated that a "computer bug" caused its system to ignore the "STOP" requests. (Doc. 88, ¶ 15).

On May 21, 2025, Chamberlian filed the instant motion for summary judgment along with the brief in support of the motion. (Doc. 84; Doc. 85). On June 7, 2025, the NRA filed a motion for extension of time through July 2, 2025, to respond to Chamberlain's motion, which the Court granted. (Doc. 93; Doc. 94). On July 1, 2025, the NRA filed another motion for extension of time requesting an additional fourteen (14) days, up to and including July 16, 2025. (Doc. 95). The Court extended the deadline to July 15, 2025. (Doc. 96). On July 15, 2025, the NRA's counsel filed a motion to withdraw as counsel. (Doc. 97). On September 15, 2025, the Court granted the motion to withdraw and ordered the NRA to obtain new counsel and respond to the pending motion for summary judgment on or before October 13, 2025. (Doc. 105). The NRA failed to do so.

## II.   LEGAL STANDARDS

### A.  MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1. While the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact, upon the movant doing so, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*,

3

626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## III.    DISCUSSION

### A.    CHAMBERLAIN'S MOTION IS DEEMED UNOPPOSED.

As an initial matter, under the Local Rules of the Middle District, Chamberlain's motion for summary judgment is deemed unopposed because the NRA has failed to file an answer or a brief in opposition despite the Court granting two motions for extension of time to do so. (Doc. 94; Doc. 96). Local Rule 7.6 states "[a] brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief." M.D. Pa. L.R 7.6. Local Rule 7.6 also provides, "Any party

who fails to comply with this rule shall be deemed not to oppose such motion." M.D. Pa. L.R 7.6.

"[L]ocal rules play 'a vital role in the district courts' efforts to manage themselves and their dockets.'" *Smith v. Oelenschlager*, 845 F.2d 1182, 1184 (3d Cir. 1988) (quoting *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985)). The Court is obligated to ensure parties who follow the local rules are not prejudiced by those who violate them. *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (finding a court may only decline to enforce local rules where "doing [so] does not unfairly prejudice a party who has relied on the local rule to his detriment"); *see also Beckett v. Closton*, No. 1:24-CV-00476, 2025 WL 308121, at *1 (M.D. Pa. Jan. 27, 2025) (stating "the court must ensure that a party's failure to comply with the rules does not prejudice those parties who follow the rules"). In this case, the NRA has failed to comply with Local Rules 7.6 and 56.1 by failing to file a brief in opposition or a statement of material facts in response to Chamberlain's motion for summary judgment despite the Court's repeated orders to do so. (Doc. 94; Doc. 96; Doc. 105). This failure now compels the Court to deem Chamberlain's motion unopposed. *See Taylor v. Harrisburg Area Community*, 579 F. App'x 90, (3d Cir. 2104) (stating the "motion for summary judgment was, in fact, unopposed, as no response brief was filed, and Local Rules 7.6 and 56.1 gave the District Court the power to deem the summary judgment motion as uncontested"). However, a district court is "still required to conduct a full analysis to determine whether granting summary judgment was appropriate." *Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 614 (3d Cir. 2018).

B. CHAMBERLAIN IS ENTITLED TO SUMMARY JUDGMENT.

1. **The NRA violates § 1692c(c) of the FDCPA.**

Chamberlain argues that the NRA violated § 1692c(c) of the Fair Debt Collection Practices Act ("FDCPA").[1] (Doc. 85, at 13). Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692c(c) of the FDCPA provides that "[i]f a consumer notifies a debt collector in writing… that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt[.]" 15 U.S.C. § 1692c(c). To prevail on an FDCPA claim, a plaintiff must prove that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

A consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Chamberlain submits that there is no dispute that she is a consumer. (Doc.

---

[1] The Court previously determined that Chamberlain has standing to bring this action. (Doc. 69, at 7); *see Uzor v. Flink*, No. 25-CV-1873, 2025 WL 1646573, at *2 (E.D. Pa. June 9, 2025) ("Before the Court can assess whether [plaintiff] has stated plausible FDCPA claims, it must first address whether [plaintiff] has sufficiently alleged standing to pursue each of the claims.").

85, at 13-14). The record evinces that Chamberlain had "debt to a Florida utility company," which was "placed for collection with [the] NRA." (Doc. 88, ¶ 22; Doc. 85-5, at 7:22-8:9; Doc. 85-4, at 5:12-6:6). In her deposition, Chamberlain explained that the debt was related to a water bill under her name from the City of Pinellas Park in Florida. (Doc. 85-5, 7:22-8:9). The Court finds that Chamberlain is a natural person who had an obligation to pay debt for municipal services. *See Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232-33 n.8 (3d Cir. 2005) (finding that consumption of municipal water services gave rise to an obligation to pay money, which arose out of a transaction for personal, family, or household purposes) (quotations omitted) (citing *Pollice v. Nat'l Tax Funding*, 225 F.3d 379, 401 (3d Cir. 2000)); *see also Albanese v. Portnoff L. Assocs., Ltd.*, 301 F. Supp. 2d 389, 401 (E.D. Pa. 2004) (noting that district courts have held, pursuant to Third Circuit decisions, that fees for water services owed to a municipality were a debt under the FDCPA). Therefore, Chamberlain is a consumer, and the first element of her FDCPA claim is satisfied.

Next, a plaintiff must prove that the defendant is a debt collector. *Douglass*, 765 F.3d at 303. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Chamberlain submits that the NRA is a debt collector (Doc. 85, at 14), and the NRA identifies itself as a debt collector. (Doc. 85-4, at 5:1-5). Specifically, the record reflects that on December 22, 2019, the NRA texted Chamberlain, "National Recovery Agency is a debt collector attempting to collect the debt you owe to the creditor listed in this communication. We will use any information obtained from you to help collect the debt[.]" (Doc. 85-4, at 5:1-5). The Court determines that

the NRA is a debt collector. *See Daubert v. NRA Group, LLC*, 861 F.3d 382, 387 (3d Cir. 2017) (accepting NRA as a debt collector in an FDCPA claim); *see also Bower v. NRA Grp.*, LLC, No. CV 18-389, 2019 WL 3306515, at *3 (W.D. Pa. July 22, 2019) (finding that NRA is a debt collector for the purposes of a plaintiff's FDCPA claim). Thus, the Court finds that Chamberlain meets the second element of the FDCPA claim.

The third element assesses whether "the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it." *Douglass*, 765 F.3d at 303. As previously mentioned, a "debt" is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Chamberlain avers that the NRA sent text messages to her and class members "in an attempt to collect consumer debts." (Doc. 88, ¶ 1). In its text messages to Chamberlain on December 22, 2019, the NRA made it clear that it was "attempting to collect the debt" Chamberlain owed to the Florida municipal in water fees. (Doc. 85-4, at 5:2; Doc. 85-5, at 7:22-24). The NRA made another attempt via text message to collect debt on January 6, 2021. (Doc. 85-4, at 6:2-7). Accordingly, the Court finds that the NRA attempted to collect from Chamberlain and class members, satisfying the third element of Chamberlain's FDCPA claim. *See Ahmed v. West Coast Servicing Inc.*, 541 F. Supp. 3d 563, 576 (E.D. Pa. 2021) (noting that courts find a communication initiated by a debt collector "is made in furtherance of the collection of debt"); *see also Balon v. Enhanced Recovery Co., Inc.*, 264 F. Supp. 3d 597, 613 n.6 (M.D. Pa. 2016) (finding that the third element of an FDCPA is satisfied where a defendant began correspondence "in an attempt to collect an obligation" from plaintiff).

Finally, a plaintiff must prove that the defendant violated a provision of the FDCPA in attempting to collect the debt. *Douglass*, 765 F.3d at 303. Chamberlain asserts that the NRA violated § 1692c(c) of the FDCPA. (Doc. 85, at 14). Pursuant to § 1692c(c):

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

> 15 U.S.C. § 1692c(c).

"[A]n alleged debtor must directly inform the debt collector in writing that he or she refuses to pay the debt or that communications should cease before he or she can bring a claim under § 1692c(c)." *Strouse v. Enhanced Recovery Co.*, 956 F. Supp. 2d 627, 635 (E.D. Pa. 2013). In text messages for debt collection, the NRA advised recipients to respond with "STOP" to cease the communications. (Doc. 85-4, at 24:7-9). The NRA admits it continued to send these text messages to Chamberlain and class members after the NRA received and documented messages containing "STOP." (Doc. 85-4, at 5:24-6:7, 10:6-24, 20:19-21:18, 24:10-11).

Text messages containing "STOP" fulfill the "in writing" requirement for the fourth element. *See Martinez v. Williams Rush & Assocs. LLC*, No. 1:24-CV-01480-RP, 2025 WL 2182330, at *3 (W.D. Tex. Apr. 3, 2025), *report and recommendation adopted*, No. 1:24-CV-1480-RP, 2025 WL 2598374 (W.D. Tex. Sept. 8, 2025) ("While the FDCPA does not explicitly approve of text messages as notifications in writing, related regulations contemplate consumer notification (an opt-out) via text.") (citing 12 C.F.R. § 1006.6(e)). Accordingly, the Court determines that, by sending Chamberlain and class members text messages after

receiving responses to cease communication, the NRA violated § 1692c(c) of the FDCPA.[2]
*See Martinez*, 2025 WL 2182330 at *3 (finding sufficient showing of a § 1692c(c) violation after
defendant continued to contact plaintiff even though plaintiff texted "stop"); *see also Hussaini
v. Cap. Link Mgmt. LLC*, No. 1:21-CV-2901-MHC-JSA, 2023 WL 2908825, at *1 (N.D. Ga.
Mar. 20, 2023), report and recommendation adopted, No. 1:21-CV-2901-MHC-JSA, 2023
WL 4048691 (N.D. Ga. Apr. 14, 2023) (finding that plaintiff's § 1692c(c) claims were "well
supported" after replying "STOP" to defendant's series of text messages in an attempt to
collect debt); *see also Lanteri v. Credit Prot. Ass'n, L.P.*, No. 113CV01501JMSMJD, 2020 WL
3200076, at *14 (S.D. Ind. June 15, 2020) (granting summary judgment in favor of plaintiff's
§ 1692c(c) claim when defendant "made several phone calls to [plaintiff] after receiving her
'stop' text message").

**2. The NRA cannot assert the bona fide error defense under § 1692k(c).**

After finding that the NRA's text messages violate the FDCPA, the Court must
determine whether the NRA can utilize the bona fide error defense. (Doc. 69, at 14).
According to Chamberlain, the bona fide error defense does not apply for three reasons. (Doc.
85, at 11-13). First, the evidence fails to prove that the NRA's post-STOP text messages were
a clerical mistake and unintentional. (Doc. 85, at 12). Second, the NRA never ensured that
its texting vendor would comply with the "STOP" requests. (Doc. 85, at 12). Lastly, the
NRA's written policies "were never actually implemented and should be disregarded." (Doc.
85, at 17). Aside from raising the affirmative defense in its answer to Chamberlain's amended
complaint, the NRA has not presented any further evidence or arguments related to the bona

---

[2] Nothing in the record serves as evidence that the NRA's text messages to
Chamberlain or class members fall within one of the three exceptions. 15 U.S.C. § 1692c(c).

fide error defense, and has not responded to Chamberlain's motion for summary judgment. (Doc. 10, at 11).

The FDCPA is generally considered a strict liability statute because "it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 & n.7 (3d Cir. 2011). The bona fide error defense serves as an affirmative defense against the general strict liability of the FDCPA. *See McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 1181974, at *14 (E.D. Pa. Mar. 11, 2020). It provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

Accordingly, to avail itself of the defense, a party must establish: "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." *Beck v. Maxims, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006). The bona fide error defense protects debt collectors only if they make "clerical or factual mistakes." *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 283 (3d Cir. 2019) (citing *Daubert v. NRA Group, LLC.*, 861 F.3d 382, 394 (3d Cir. 2017)). The Third Circuit has stated that procedures are "'processes that have mechanical or other such regular orderly steps' designed to 'avoid errors like clerical or factual mistakes[.]'" *Daubert*, 861 F.3d at 394; *see Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."). Procedures require a special system to be established to prevent errors and must maintain a checking mechanism "to catch any errors that slip through the system."

*Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 251 (3d Cir. 1980). A bona fide error defense asserted under § 1692k(c) must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Balon v. Enhanced Recovery Co., Inc.*, 316 F.R.D. 96, 103 (M.D. Pa. 2016). To satisfy Rule 9(b), the party must "plead the who, what, when, where and how: the first paragraph of any newspaper story." *Balon*, 316 F.R.D. at 103. (internal quotations omitted). The affirmative defense places the burden on the debt collector to prove that it acted unintentionally and that it implemented procedures to avoid such an error. *See Evankavitch v. Green Tree Serv'g, LLC*, 793 F.3d 355, 363 (3d Cir. 2015).

The undisputed facts before the Court do not support an application of the bona fide error defense. With the NRA not responding to the motion for summary judgment, the undisputed record establishes that it never communicated with its texting vendor to ensure compliance "STOP" requests. (Doc. 85-4, at 37:16-20, 38:15-16). The Court finds that the NRA is not entitled to the bona fide error defense. *See Johnson v. Stillman L. Off.*, No. CV 23-2433-KSM, 2024 WL 1333364, at *7 n.11 (E.D. Pa. Mar. 28, 2024) (finding that the § 1692k(c) defense should not be considered because defendant did not argue for its protection from liability at summary judgment); *see also Hassine v. Simon's Agency, Inc.*, No. CV189031FLWTJB, 2020 WL 3481815, at *6 (D.N.J. June 26, 2020) (entering summary judgment in plaintiff's favor where "a reasonable jury could not find that [d]efendant is entitled to protection under the bona fide error defense because [d]efendant has failed to meet its burden").

IV.    CONCLUSION

Based on the foregoing, Chamberlain's motion for summary judgment is GRANTED. (Doc. 84). The Clerk of Court is directed to enter judgment in favor of Plaintiff and close this

case.

An appropriate Order follows.

**Dated: March 11, 2026**                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**